Number 152171, Bernardino Santos-Rodriguez et al, the SeaStar Solutions. Good morning, Your Honor. Attorney Carlos Del Valle on behalf of Mr. Santos. Good morning. During the summer of 2010, Mr. Santos, clerk, I don't think my clock is running. I don't want to take advantage of it. Thank you. During the summer of 2010, Mr. Santos was a guest aboard a leisure boat that was cruising in the waters of Puerto Rico when unexpectedly the end rod of the boat broke, the end rod of the steering wheels broke, causing the motor to spin out of control, lurching Mr. Santos against the transom and leaving him paraplegic for life. As a result, he brought suit in federal court against the product designer and manufacturer under the diversity statute and indeterminated under maritime law. On appeal, Mr. Santos alleges three errors of law, that the district court erred in dismissing the diversity suit and not applying Puerto Rico law, that it erred in applying a federal maritime law that incorporated a surgery statement of law, and that it did not heed the duty to stand at the warnings that the expert witness testified to. Ever since the Judiciary Act of 1789, Congress has permitted, has allowed the states that are common law rights to see maritime torts and whenever diversity requirements are met, to see these torts in federal court. In denying diversity jurisdiction, the district court relied on this court's decision in Cary, which was written by Judge Torruella. But Cary does not stand for a blanket block on diversity jurisdiction. It merely states that there must be a balance between federal and state interests and that the only limit with respect to the state law is the warning in East River that state law may not displace essential features of substantive maritime law. As to personal injuries, this court has consistently held that they may be brought under state law and there's no merit to the argument that defendants bring that if there is any federal law with respect to personal injury that they preempt the diversity in the state law application of federal rights. This court, the Supreme Court in the Yamaha case of 1996, addressed a similar issue where the defendants alleged that a previous Supreme Court case had held that there was a federal maritime law for personal injury and the court held that notwithstanding that if there was a state law that was more favorable to the plaintiff, the state law could apply because the purpose of amateur law was to be beneficial to the plaintiffs. In applying, in using the third restatement of the law, the court, the district court relied on the case of Oswald. That is a misreading because Oswald was a case where both parties consented to the application of the third restatement of the law, but there was no holding by the court that was applying, it was using that as federal maritime law. The correct law is established by this court's precedent in the case of Collazo v. Toyota Motors, also defended by Justorilla, where the court summarized all of Puerto Rican law and reduced it to a very simple test. Did the plaintiff show that the product was defective and was the defect the proximate cause for the injury? According to this court, under law, and citing the Puerto Rico case of Aponte, a product is deemed defective if it fails to perform as expected by an ordinary consumer in its regular use. And this was the case here that the expert witness in our case testified that, A, the end rods were corroded, B, that the corrosion of the end rods caused them to break, C, that the breakage of the end rods caused the outboard motors to steer out of control, that the malfunction of the outboard motors caused the accident, that the accident caused the injury, and that there was a duty to warrant that was not followed in the instruction manual given to the plaintiff. The duty to warrant, as read by the expert witness, consisted that as part of the standard hierarchy in engineering, designs, and manufacturing, the product manufacturer is required to warrant against all foreseeable hazards such as the hazards associated with the subjective time with the hydraulic steering cylinder rods and interchangeability, corrosiveness, preventive maintenance, and of life risk associated with the failure to follow those warnings. Here, the defendants never contested that Puerto Rico law apply. If you look at their motion for summary judgment, there's no argument of federal maritime law. It is all done under Puerto Rico law. Before you, can I just understand one factual point? There's these two, are they bolts, the stainless steel 303 and 316? Yes, Your Honor. Okay. The district court seemed to think that there was no admissible evidence showing that stainless steel 303 was used, because the expert's report, according to the district court, didn't say that one was being used. It just said that would be a bad one to use. Well, the district court report said that if they had used the 316. That would be a problem because that corrodes too easily, right? It would fix the problem. Or is it the other one, 316 is the bad one to use? It doesn't matter. There's two different kinds. One's good, one's bad. One is bad. Okay. But the district court found that there was nothing in the expert's report identifying which type was actually used. That is correct. And do you contest that on appeal? Yes, we did. We did. Well, we say, first of all, it's not necessary. I understand that. But do you contest, do you say that, in fact, the district court erred in making the ruling that the report doesn't say which type was used? We did, Your Honor. We pointed out that even though the report does not state it, in his deposition, he was asked about it and he testified about it, and that the district court committed a reversible error because the criteria for disallowing the deposition, the supplement, is whether it created a prejudice to the defendants. And here we argue that there was no prejudice created to defendants. Okay. No, I understand that you contested because of the deposition. I'm just trying to figure out, do you contest that his account that the report itself doesn't say which type of bolt was being used? The report doesn't say which type was used. And nothing else other than the deposition gives insight then into what was being used. As a fact of the matter, you're correct, but that is not relevant because the different type of steel is only relevant if you use the third restatement of torts because the third restatement of torts required that the plaintiff prove that an alternative design was reasonable and that it was not used. But you have to have proximate cause under any theory. And if you didn't use the only kind of bolt that was understood to be the kind that would corrode, how could you make out a proximate cause argument? Because if you established that, that the product was negligent because it failed to perform, and if that negligence... So your argument is that even if they used the kind of bolt that doesn't corrode, you could still win? Of course. I see. But I want to explain why. Because the expert testified that the end rods were corroding. And that corrosion led to a change of event that caused the accident, and that change of event was the proximate cause that caused the injuries. Now, he stated in his... But the fact that... Is your position that as long as there's corrosion, there's a design defect? As long as there's a corrosion and plus, if there's a duty to warn about the corrosion... Put aside the duty to warn for a moment, just on the design defect. Yes, Your Honor, because as the court stated in Toyota, if a product fails to perform as expected in its ordinary use, and this is what we have here, the man gets on a leisure boat and the corrosion causes an accident that leads to paraplegic, that is a failure to perform as expected when it's being used in its normal use. But we don't know that that's attributable to the design. Well, that's what he testified. When you look... No, but he testified in part because if you use the wrong kind of bolt, it would be likely to corrode. No, no, Your Honor. I wish to redirect the court's attention not only to that testimony that was in the end of the position, but to his expert report, which when this report summarized the evidence, it left out the important part, which was that the product manufacturer had a duty to warn with respect to the foreseeable hazards of corrosion in the end ruts. And because it had that duty to warn, we believe that in not complying with the duty to warn, it caused the risk associated with the failure to warn that was the accident for not giving proper maintenance to the end ruts. So the approximate cost is not due... I mean, it could be due to the lack of the proper use of the material. But for purposes of this appeal, we don't need that to prevail because we believe that the approximate cost was the fact that the expert did testify as to a duty, as to warning that this type of material was corrosive. And insofar as the defendant did not include that warning... Which type of material? Which type of material was corrosive? The one that was actually used in the boat, not the one that could be reasonably used. The one that was used for the end ruts. But we don't know which of the kind it was, do we? Yes, we do. We do. But whatever it was, he took photographs of the end ruts and he testified that the end ruts were corroded. And according to his testimony, that corrosion of the end ruts should have been a foreseeable hazard. And the instruction manual that was included in the boat did not make any warnings that that should have been a foreseeable hazard. So therefore, that corrosion of the end ruts... But if you used the right kind of boat, would it have been a foreseeable hazard? If you used the right kind of boat, it might have been a foreseeable hazard. Do we have any evidence that it would have been then a foreseeable hazard? If you used... The evidence... The disallowed testimony of the expert was that if you used the right type of boat, it was less probable that the accident would occur. Let me ask you something. Is there a duty to warn about hazards that are of general knowledge? There is a duty to warn what the expert testifies... No, no. I'm not asking about experts. I'm asking about general principle of law. And I don't know. I'm asking you. Is there a duty to warn about a general hazard known to the public? Well, I think there is a duty to warn as to any foreseeable hazard that may happen regardless of whether it's generally known to the public or not. At least that's what the expert, Dr. Bouchagi, testified, that that duty to warn applies in the case of end boats at least. And the district court... The district court, Your Honor, must take into account that the district court acknowledged this in its decision. It acknowledged that there were certain warnings, but that the warnings did not meet. It did not satisfy any warnings with respect to the duty to warn with regards to the corrosion of the end boats. But you just said that the only way in which it would be... The reason to think that there would be corrosion about which you would have to warn would flow from using the other kind of boat, correct? No, Your Honor. No, to the contrary. What I'm saying is that the corrosion comes from the boats that were used in this occasion. Right, the 303 boats. The 303 boats. I don't remember the distinction. I'm sorry, but it's the 303 boats. But the point that Judge Barron is trying to make is that you're conceding based upon the expert report, which I have some problems with, by the way, but you're conceding that just based on the expert report, we don't know if it's the offending 303 boat or if it's the good boat that's the subject matter of the report. No, it is offending 303 boats because he only examined offending 303 boats, and his report was based on the end boats that were on the boat. The district court found that the report does not tell us which boat was used, correct? Let's just go through it. That's what the district court found. It could not make a distinction between the two types of boats. Right, the report just didn't. And you don't contest that finding on appeal. No. Well, we... So since you don't contest the finding on appeal, as the case comes to us, I have to assume that it was the good boat that was used. Not because, in fact, it was the good boat that was used, but because of the way the record is developed here. And then I just have a hard time seeing how you win if we have no reason to doubt that it was the good boat that was used because the good boat wouldn't have caused the corrosion, and the good boat then wouldn't trigger the... Well, there's no evidence that the good boats were ever established if they used... Exactly, and there's no evidence that the bad boat was... Well, it's the only one that had been used. I mean, there's no controversy as to that because up to then, the one that had been used were the bad boats, the 303 boats. One that had been used, what, in this type of... In this type of vessel. And is that in the record? That, I believe, is in the record, yes. I'm sorry, but I have to answer another question leading from my first question, which you didn't answer, by the way, and maybe I have to look it up by yourself. But if there's no duty to warn about something that is of general knowledge, the next thing that I would ask, is it of general knowledge that metal rusts in environments like the ocean? Well, some metals might rust more than others. I don't know what the general duty is, but I do know that the witness testified that as to this metal in particular, there was a duty to warn because it was subject, it was prone to corrosiveness. And I think that once the witness testified this, remember that the defendants did not put any expert witness to contest the testimony of our expert witness. The only thing that's on the record is whether this testimony of the expert witness is sufficient to raise a controversy of respect as to the proneness of corrosiveness of the metal that was in the boat. And it's our argument on the brief that if you examine the testimony of the expert witness in its totality, you will see that he was referring to the steel that was corrosive because he took pictures of the steel and he examined it. He examined whether it was corroded or not, and he found it to have been corroded. Does that answer? The procedural problem that you come to us with is that the court excluded the deposition and you really don't challenge that exclusion in your brief because you say that regardless of its exclusion, we can rely on the report. And then we have this finding by the district court that it's not clear from the report what boat was referenced in the report. You're in a tricky procedural posture before us. Well, Your Honor, no. We do spend part of the brief on the argument. You spend one sentence saying there's no prejudice. There's no separate developed argument as to why the judge was wrong in excluding the deposition testimony. Let's see if I can find it. There is, Your Honor, there is. We put it in the alternative, no? We know that when you challenge that type of decision, it's a discretionary decision. Well, that doesn't mean you're excused from challenging it. You just have to tell us why the court views this discretion. Because there was ample time to take the deposition. I mean, the deposition, the taking, I mean, the amendment of the expert report would not have required any type of additional problem, particularly when you already had the deposition and it was before trial. And that argument, we have it at page 31 of our brief. If we argue, we submit it at the motion for reconsideration, if I remember correctly, arguing that there was no prejudice in allowing the expert testimony with respect to this and, therefore, that it was wrong to exclude it. But I want to emphasize again, Your Honor, that the whole problem, we think, originates with the use of the third restatement of torts. Because under the third restatement of torts, the plaintiff must prove that. But under the Puerto Rico law, it is for the defendant to show that it was a reasonable alternative. No, no, no. You're missing the argument. So just so you understand, so then maybe you can address it. I'll be responsible. Yeah. There has to be proximate cause under the first, second, third, and probably the fourth restatement. Right? So for the design defect argument, we're not talking about reasonable alternative. We're just trying to figure out, is there anything in the record that supports the idea that the bolt used is the kind of bolt the expert testified it would be a design defect to have used? And the problem is that the district court said that, well, that evidence is in the deposition because he says you used that kind of bolt, but he excludes that. And the report itself doesn't say which kind of bolt was used. So what we're trying to figure out is, if there's nothing in the record to show what kind of bolt was used, how do you get past proximate cause? Well, I believe that the inference is that the bolt, that the 303 metal, was the one that had been used up to now by the defendants in that. I see. So you're saying even if we didn't have the deposition, it would still be a basis for a jury reasonably to infer that it was the 303 bolt. It is because when the expert examined the specifications for that type of bolt, that is what I think was there at the moment. There was not use of any other type of end ruts for purposes of the construction of that bolt. I mean, even though they changed their warning subsequent to the 202 addition to contain the corrosion warnings, at the time of the 202 addition, they did not have those warnings. But they always used the 303 end ruts in the construction, and an expert witness did testify that he looked at the specifications of the bolt in making his expert report. And in the specifications of the bolt, it is reasonable to assume that the 303 steel was the one that was in the specs, because there is no evidence that they ever used any other one. Thank you, Your Honor, for your time. Thank you. Good morning. Good morning. I may please the Court. Salvador Antonetti on behalf of Appellee Seastar Solutions. I would like to start by answering a couple of questions that the Court has asked my brother counsel. One of them was specifically with respect to the issue of the metals, and I just want to clarify a little bit of the record there. First of all, the record does not contain the specifications to which counsel was making reference. The summary judgment record specifically does not, and also the appellate record does not. So there is, other than the excluded testimony during the deposition, there is no reference to the different grades of steel. In fact, that's partly because there was a dispute below about that being a new theory developed well after the report had been prepared. And so that never came into the record here. Second. Well, there's a slide appended to the expert's report. It is not. The District Court below found that that was not actually part of the report. So a report that incorporates a slide can. It is not incorporated. It was produced during discovery, but it was not actually incorporated into the report. So as a factual matter, the District Court actually pointed that out in its well-reasoned opinion. We also need to point out that the District Court also wants, there has been, I think, for rhetorical purposes discussed here about the correct kind of steel, et cetera. The expert's opinion never went that far. I just need to pin this down. Because the report itself references a slide. And so the District Court said that because the slide itself, which contains the type of steel, was not, in fact, actually appended to the report, that it's not a part of the report. Yes, Your Honor. Moreover, there is no part of the report that talks about the different benefits or costs or reasons for thinking any particular grade of steel would be improper. In fact, the Statistical Court itself mentioned in its opinion, just to put it in, the expert himself mentioned that his students could have used the other grade of steel. And there was no comparative determination. Put that aside, though. Yes. Because you only get to that issue if there's any indication that the wrong steel was used. Right? Yes. Yes. You would challenge whether it's the wrong steel, but okay. For my purposes. But our position is that the District Court correctly, oh, sorry, did I interrupt? Yes. Well, you didn't interrupt, but the slide that was found not to be part of the report, I take it that finding that it was not part of the report has not been challenged on appeal. Correct. And, in fact, in footnote six of, I think it's six, no, footnote five of Appellant's brief specifically waives the argument. And if I look at the record, I won't find anything else in the record that would suggest that the past practice with respect to this type of, is it an engine? No, it's actually, it's a steel rod. Yeah, this type of rod. I won't find anything to indicate that in the past this type of steel had been used in this model. Exclusively. It's correct. It's not part of the summary judgment record, which is what was before this court. Another point that the court raised was a question that Judge Sorolla asked about the duty to warn about hazards that are of general knowledge. And that's actually specifically covered by the restatement, both section, second restatement section 402A's comment J, which specifically addresses that issue. And the rule is that, in general, a product seller is not subject to liability for failing to warn or instruct regarding risks that should be obvious to or generally known by foreseeable product users. So the answer to your question is, in fact, that is a rule. And we also think that, as a corollary, that that rule would apply here as well, the corrosion being natural, that all metals rust in seawater, and particularly one that has been. So the thing that needs to be specified here in this case is that the evidence, the undisputed evidence. That wouldn't address the design defect point, though, right? No, no. This is just a general. I was answering. Yeah, yeah, yeah. I understand. It's important to keep in mind certain important facts on the summary judgment record I think are going to be critical. But here, this is a secondhand boat that the owner of the vessel had had for about eight years. He did not personally give it any maintenance, did not ask for or have any logs, did not ask for or have any manuals. He did not read the stickers on the actual parts on the boat. There was no evidence. The only evidence was that he had occasionally sent it out to mechanics for maintenance but had no idea whether they knew anything about the manuals or the warnings of any sort. And we think that that is a critical factual distinction in this case that should affirm, should lead the court to affirm the trial court's decision, regardless of whether it applies Puerto Rico law or the second restatement or the third restatement. And I actually, because it has been an important issue in this case, I want to point out that a lot of the briefs is focused on the question of what the applicable law should be. That issue is much less important now because as of last summer, the Puerto Rico Supreme Court issued its most recent opinion after almost 20 years on the issue of strict products liability, particularly design and failure to warrant cases, and extensively quoted and cited and relied on the third restatement. So insofar as there was some question as to where the Puerto Rico Supreme Court was going to go on this issue, we had actually predicted it in our brief, which was filed maybe two months before the opinion came down. So that doubt, I think, is no longer, should be present in the court's mind. I think that the Puerto Rico Supreme Court has spoken clearly with respect to the body of law that it will rely on. I also want to point out that- Is that case cited in your brief? In our 28-J letter, because the opinion of the Puerto Rico Supreme Court came down after our brief had been filed. We had no way of citing it before. Is that involving a manufacturer's defect? The case was not, no, that actually, that is the Rodriguez-Mendez opinion that came down last summer, and it is actually a design and failure to warrant case, not a manufacturing defect case. This case is also not a manufacturing defect case. But if I understand it, your theory of the case to us, like the district court, is at a threshold question of proximate cause, which- There are other arguments, but that is the- The issue of whether the Puerto Rico Supreme Court does or does not adopt the third restatement has no bearing on that question, because that wasn't in dispute even before. Correct. We simply want to cover all the bases and make sure we have alternate arguments. And so to go back to your point, so the main issues in this case, the choice of law that we just mentioned, and then there were the two kinds of defects that were alleged and argued by the appellant, design and failure to warrant. And just to quickly summarize, we think that with respect to design, there is actually no finding, and the district court correctly points this out, there is no finding of a design defect in the record itself. So that is- And second, even if there had been, there is a problem of proximate cause. With respect to failure to warrant, our argument is more focused on the lack of proximate cause, because there are some statements that, you know, read in the light most favorable to the appellants, might be read to support a statement by the expert that there might have been inadequate warnings. Even then, frankly, that itself is questionable, but the fact is that there was no evidence whatsoever of a causal connection, and any such evidence would be defeated by the facts that I mentioned earlier, the fact that nobody, the owner and the mechanics, there was no evidence that they had actually read the warnings, and so there's really no causal chain here. Could you just address the argument they do make challenging the exclusion of the deposition testimony, because the deposition testimony would provide a basis for concluding that it was the 303 bolt, right? The deposition testimony, as a factual matter, if admitted, if plaintiff, sorry, if this court were to overlook the fact that plaintiff's appellants actually expressly waived the issue, and again, I just want to read from footnote five, where they specifically state that appellants rely here simply on the report and do without the deposition testimony. So that is, I think, an express waiver, and so I will, of course, But the thing about that is they separately also do assert that there was no prejudice from the deposition testimony, don't they? They mention it in passing, but it's not a developed argument, and I think this court's case law is very clear on it. Matter is not adequately raised. So I take that, but if one thought that their passing reference was enough, just on the merits of it. On the merits, we still find it would be insufficient, we think, to give rise to a triable issue alone in itself, because the testimony was simply about the fact that there was a different grade of seal that was better. No, no, I was asking about the merits of the prejudice argument. How were you prejudiced by the deposition testimony being about something not in the report, given when the deposition was made in advance of trial, and you could have asked for an amendment of the report, blah, blah, blah? Well, the court is entitled to prejudice. The trial date was originally very close, and it was towards the end of the discovery. The expert report had been submitted months and months earlier. The entire litigation strategy had been designed around that. There were specific questions about whether there were any amendments to the complaint, to the report. The expert said no. So, again, there are also some Rule 26 issues here. The expert and the plaintiffs had to make sure that their report reflected their expert's position. There was no such request, even after the district court's opinion, in fact. So it makes it a moving target. And at some point, I think the district court is entirely entitled to say this has – defendants have a right to know what plaintiff's theory of the case is. And a throwaway – a few comments during a deposition is not sufficient notice. After the fact, 20-20 hindsight, the trial deadline was changed. But even then, again, plaintiffs did not pursue that point by asking for an amendment, and that would be a moot point now. Does the court have any other questions for appellees? Well, thank you very much for your time this morning.